**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | Case No. RWT 03-cv-1596 |
| | * | |
| **ERIC I. TSAO,** | * | |
| | * | |
| Defendant. | * | |

## MEMORANDUM OPINION

On September 17, 2004, Dr. Eric Tsao ("Tsao") pled guilty in the United States District Court for the District of Columbia to felony charges of securities fraud and perjury arising out of three incidents of insider trading occurring in a twenty-six month period. On June 2, 2003, the Securities and Exchange Commission ("SEC" or "the Commission") brought a parallel civil case in this Court against Tsao, which was settled with the entry of a consent judgment entered on September 23, 2004. ECF No. 1; ECF No. 38. The settlement included financial penalties—disgorgement and a civil fine—and imposed a lifetime bar on service as a public company officer or director. ECF No. 38.

On January 8, 2016, Tsao filed a Motion to Reopen Case and Modify Officer-and-Director Bar. ECF No 39. On March 3, 2016, this Court held a hearing on Tsao's Motion. ECF No. 49. Because Tsao has not met the heavy burden of showing a significant change in factual conditions or the law, or exceptional circumstances that would warrant a modification of the settlement, the Motion will be denied.

**BACKGROUND**

Tsao's plea of guilty to felony criminal charges related to insider trading and his settlement of the parallel civil case both arose from allegations that he illegally traded using non-public information he acquired as an executive at MedImmune, Inc., a publicly traded pharmaceutical company. ECF No. 39-1 at 1; ECF No. 45 at 1–2.

On three occasions, Tsao learned through his employment that MedImmune was involved in confidential negotiations with a certain company and then—within days—caused trades to be made in that company's securities. *Id.* at 3. The trades were made using a brokerage account that Tsao had opened in his father's name, even though Tsao contributed all the assets to the account, controlled and monitored the account, drew money from the account to pay his own household expenses, and Tsao's elderly father lived in Taiwan and had limited English proficiency. *Id.* In 1999, Tsao made $18,000 trading U.S. BioScience securities after a supervisor assigned Tsao a due diligence task indicating that MedImmune would soon acquire U.S. BioScience. *Id.* at 4. In 2000, Tsao illegally traded in ImClone based on his knowledge of confidential agreements between MedImmune and ImClone. *Id.* at 5. Finally, in 2001, Tsao discovered through his employment that MedImmune was involved in acquisition talks with Aviron, and realized $146,132 in illicit profits trading in Aviron. *Id.* at 6.

In 2002, Tsao learned the National Association of Securities Dealers Regulation ("NASDR") was investigating suspicious trades, including Tsao's, related to MedImmune's acquisition of Aviron. *Id.* at 7. Tsao attempted to conceal his trading activities, first by taking steps to obfuscate his control of the brokerage account, changing the account e-mail and password, and falsely telling the bank that the account had been subject to unauthorized access. *Id.* at 7–8. Tsao then falsely testified under oath that he had not been responsible for the trades,

stating that his father had purchased the U.S. BioScience shares and his wife had purchased the Aviron shares. *Id.* at 8. To corroborate his story, Tsao induced his wife and his father to lie to the SEC; they, in turn, told the SEC they were responsible for the trades. *Id.*

As part of his civil settlement with the SEC, Tsao agreed to disgorgement of profits with interest totaling $171,608, a civil fine of $330,275, and a lifetime ban on serving as an officer or director of a publicly traded company. ECF No. 45 at 8; *see also* ECF No. 39-2. In the criminal proceeding, Tsao was sentenced to fifteen months imprisonment, the lowest sentence recommended under the Sentencing Guidelines. *Id.* at 8; *see also* ECF No. 45-1 at 1.

In his motion under Rule 60(b), Tsao seeks to reopen the case and set aside the lifetime bar, based in part on his law-abiding conduct and contributions to public health in the past eleven years. ECF No. 39-1 at 2. Following his release, Tsao spent several years working in medical research and development, including at a nonprofit. *Id.* at 6–7. Since 2014, Tsao has been the chief executive officer and chairman of the board for Synermore Biologics Co., a Taiwanese start-up company funded by a private venture capital firm, Morningside. *Id.* at 7. Tsao has also been named a director of three other companies in Asia funded by Morningside. *Id.* at 9. Because of the lifetime officer-and-director bar, Synermore cannot make an initial public offering with Tsao as an officer or director, and Morningside cannot appoint him to the boards or as an officer of the public companies in which it has invested. *Id.*

## ANALYSIS

Tsao seeks relief from a permanent injunction imposed by a consent order. *See* ECF No. 39-1 at 2. Under Rule 60(b), a court has discretion to relieve a party from a final judgment or order for six reasons. Tsao first argues that it is "no longer equitable" to enforce the

injunction, and, therefore, this Court should relieve him from his obligations using Rule 60(b)(5). *Id.* at 4.  Alternatively, he argues that he should be granted relied under Rule 60(b)(6).  *Id.* at 5.

    **I.**    **Rule 60(b)(5): Relief from Judgment if Prospective Application is Inequitable**

    **a.**    **Legal Standard**

Tsao's primary request for relief is made under Rule 60(b)(5), which provides that "[o]n motion and just terms, the court may relieve a party . . . from a final judgment [or] order . . . [if] the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5).  This rule codifies a court's inherent power to modify injunctions it has issued, including injunctions entered into by consent.  *See* Th*ompson v. U.S. Dep't of Hous. & Urban Dev.*, 404 F.3d 821, 825–26 (4th Cir. 2005).  "[A] party seeking modification of a consent decree bears the burden of establishing that a significant change in circumstances warrants revision of the decree."  *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 383 (1992); *see also L.J. v. Wilbon*, 633 F.3d 297, 304-05 (4th Cir. 2011).  The movant may meet this burden by showing changed "factual conditions or . . . law."  *Rufo*, 502 U.S. at 384.  Modification is appropriate "when changed factual conditions make compliance with the decree substantially more onerous[,] . . . when a decree proves to be unworkable because of unforeseen obstacles[,] or when enforcement of the decree without modification would be detrimental to the public interest . . . ."  *Id.*  Relief is not available, however, merely because "it is no longer convenient to live with the terms of a consent decree."  *Id.* at 383.  Further, "modification should not be granted where a party relies upon events that actually were anticipated at the time it entered into a decree."  *Id*. at 385.

4

**b. Tsao Has Not Demonstrated that Continued Application of the Lifetime Officer-and-Director Bar is No Longer Equitable Due to Changed Legal or Factual Circumstances.**

Based on changed factual and legal circumstances, Tsao argues that this Court should modify the consent order so as to lift the injunction barring him from service as an officer or director of a public company for the rest of his life. ECF No. 39-1 at 2. In support, he claims his personal circumstances have changed significantly since the imposition of the bar: he has served his criminal sentence for the underlying insider trading conduct; he has followed the obey-the-law and officer-and-director injunctions faithfully for eleven years; he has made important contributions to public health, including work in the nonprofit sector; and he now has the opportunity to assume officer or director positions at least one public company. ECF No. 39 at 2, 6–8. Additionally, Tsao asserts that courts and the SEC have become more generous in interpreting the laws on lifetime officer-and-director bars, and correspondingly become more hesitant to impose lifetime officer-and-director bars. *Id.* at 13–16.

In response, the SEC contends that obedience to the injunction and to federal securities laws is minimum acceptable behavior, not exemplary conduct constituting a change in circumstances. They also note that Tsao received the benefit of the negotiated-for settlement agreement in his criminal sentencing and therefore should be bound by it. Finally, the SEC argues that no laws have changed regarding lifetime officer-and-director bars, as shown by the fact that the Commission continues to seek and obtain lifetime bars through both litigation and settlement. ECF No. 45 at 10, 14, 16, 20.

  i. **Lack of Changed Factual Circumstances**

While Tsao's law-abiding, productive work in medical research and development since his release may be laudable, he has not shown changed factual conditions that make obedience to

the injunction "substantially more onerous," "unworkable because of unforeseen obstacles," or "detrimental to the public interest." *Rufo*, 502 U.S. at 384.

Here, although it may be inconvenient for Tsao's company to replace him as an officer or director before it can become a public company, Tsao knew of this potential conflict when he accepted a leadership position—as did Synermore's investment benefactor, Dr. Chan. *See* ECF No. 39-1 at 8 ("Before asking [Tsao] to lead [Synermore], Dr. Chan was fully aware of Dr. Tsao's past violation[ ][and] his criminal and civil sanctions . . . ."). It is not "substantially more onerous" for Tsao to conform with the consent decree's required behavior—to not serve as officer or director—because of unanticipated factors outside his control. By accepting a leadership position at a company that could become publicly traded, Tsao himself created the circumstances that have led to his present situation. Any allegedly "onerous" consequences are ones he has brought on himself.[1]

It would also be inaccurate to find that the conflict between Tsao's officer-and-director bar and his leadership of a company interested in making a public offering is an "unforeseen obstacle." The bar was in place for ten years before Tsao became CEO of Synermore. *See* ECF No. 39-1 at 6–7. Relief from this consent order is not available merely because "it is no longer convenient to live with the terms" that Tsao agreed to previously. *Rufo*, 502 U.S. at 383.

Finally, *Rufo* would permit modification if continued enforcement of the consent decree would be detrimental to the public interest. *Id.* at 384. In this case, the SEC plausibly argues that modifying this decree would lead to numerous defendants with lifetime officer-and-director bars asking this and other courts or the Commission to lift or reduce their bars. ECF No. 45

---

[1]Tsao has not shown that it is onerous for him to continue to be subject to the bar in any other way. His record of employment since his release from incarceration—and even in the interim between his conviction and incarceration—shows he has been able to continue working, and advancing, in his field. ECF No. 39-1 at 6–8; ECF No. 45-1 at 9–10.

at 17 n.12.  This would be detrimental to the public interest in the finality of judgments, and, in particular, to the SEC's ability to negotiate settlement agreements that include permanent injunctions.  *See SEC v. Conradt, et al.*, 309 F.R.D. 186, 188 (S.D.N.Y. July 23, 2015) ("[R]elief under Rule 60(b) is not intended to allow one side of a settlement agreement to obtain the benefits of finality while placing the other side at risk that future judicial decisions will deprive them of the benefit of their bargain."); *Kelly*, 736 F. Supp. 2d at 804 ("[T]o permit modification of the injunction here based on mere compliance would threaten the efficacy of this remedy as a tool in furtherance of the public interest.").  Tsao's claim that a public interest in his contributions to science and medicine suffers because he cannot be a public company officer or director is contradicted by the fact that he has made important and beneficial contributions to public health during the past eleven years while the bar has been in place.  *See* ECF No. 39-1 at 8, 9.  There is simply no reason why he cannot continue to do so.

Further, although the Fourth Circuit has not ruled on the issue, Tsao's argument that his eleven years' of compliance warrant relief from the injunction is not persuasive.  A majority of Circuits that have considered the question have held that prolonged obedience to an injunction, standing alone, is not enough to justify dissolution, although it may be a factor to be considered. *See SEC v. Coldicutt*, 258 F.3d 939 (9th Cir. 2001) (holding nine years' obedience to injunction barring trader from selling unlicensed securities did not warrant terminating injunction) (citing cases in accord from the Third, Seventh, Ninth, and D.C. Circuits); *see also MicroStrategy, Inc. v. Bus. Objects, S.A.*, 369 F. Supp. 2d 725, 735 (E.D. Va. 2005) (holding that full compliance with the terms of an injunction "merits little consideration as compliance is what the law expects"); *Commodity Futures Trading Comm'n v. Kelly*, 736 F. Supp. 2d 801, 803 (S.D.N.Y. 2010) (declining to modify trader's bar from commodities-related activities under Second Circuit

precedent "allow[ing] but [] not compel[ling]" court to relieve injunctions "based on substantial compliance"). *But see SEC v. Thermodynamics*, 464 F.2d 457, 461 (10th Cir. 1972) (holding that "substantial period of time with full compliance" can constitute a "significant factor" in showing a change in circumstances warranting dissolution of injunction and, in some cases, may be "about all an individual can show under these circumstances"). Although Tsao argues that his present and potential future contributions to medicine constitute something additional to mere compliance over this period, he has not shown that he has done anything besides obey the law while working in his occupational field. This is not enough to relieve him of the obligations to which he consented. *See Rufo*, 502 U.S. at 385 ("[M]odification should not be granted where a party relies upon events that actually were anticipated at the time it entered into a decree.").

###    ii.    Lack of Changed Legal Circumstances

Citing changed law, Tsao further urges this Court to apply the Second Circuit's reasoning in *SEC v. Patel*, 61 F.3d 137 (2d Cir. 1995), regarding the appropriateness of a lifetime bar, and find the bar here was unwarranted. Tsao argues, essentially, that courts determining whether to apply a lifetime bar since Tsao's 2004 settlement agreement have applied *Patel* and only allowed lifetime bars in rare circumstances. ECF No. 39-1 at 14–15. However, *Patel* was decided in 1995, so its reasoning is not a change in the law since Tsao agreed to his lifetime bar in 2004. As a result, the propriety of Tsao's lifetime bar under *Patel* is something Tsao could have raised at the time of the settlement or litigated, had he chosen to do so. Instead, Tsao consented to a settlement that included a lifetime bar. Additionally, the SEC has rebutted Tsao's argument that the Commission has ceased to regularly obtain or seek permanent bars, providing numerous recent examples. ECF No. 45 at 20 nn.17 & 18. Courts have entered lifetime officer-and-director bars in litigated cases as recently as 2014. *Id.* at n.17. *See also*

*SEC v. Resnick*, 604 F. Supp. 2d 773 (D. Md. 2009); *SEC v. Gupta*, No. 11 Civ. 7566(JSR), 2013 WL 3784138 (S.D.N.Y. July 17, 2013). Furthermore, in 2013, the SEC successfully opposed a defendant's motion to lift a lifetime officer-and-director bar entered into through a settlement agreement in the Eastern District of New York. *SEC v. Alexander*, No. 06-CV-3844 (NGG)(RER), 2013 WL 5774152, at *4 (E.D.N.Y. Oct. 24, 2013). The court in *Alexander* pointed out that even if the defendant might have gotten a shorter bar had he litigated the case and *Patel* been applied, the defendant was "aware of the ramifications" of submitting to the lifetime bar in the civil settlement, "he chose the bar over further negotiations or litigation," and "he received not only the benefits of quick settlement of his civil case," but also lenient treatment in a parallel criminal sentencing "as a direct result." *Alexander*, 2013 WL 5774152, at *4–*5. These factors are similar to Tsao's situation, and he, too, should not be permitted to modify his settlement agreement based on speculation about what impact *Patel* may have had on the hypothetical litigation of his case.

Tsao also relies heavily on *SEC v. Buntrock*, a 2010 case from the Northern District of Illinois where, five years after lifetime officer-and-director bars were imposed, the SEC consented to a new order reducing four defendants' bars to five years, effectively immediately terminating the bars. ECF No. 39-1 at 16–17. The SEC initially opposed the reduction, SEC Mot. in Opp'n, ECF. No. 556, *SEC v. Buntrock*, No. 02-C-2180 (N.D. Ill. filed July 29, 2010), but eventually consented to a new order terminating the bar, *see* ECF No. 39-3 at 1. In their response here, the SEC explains that it consented to terminate the bars in the interests of "horizontal equity" between codefendants: that is, a defendant with greater culpability litigated the case and received a shorter officer-and-director bar than the defendants that settled. ECF No. 45 at 19. This distinguishes it from Tsao's situation, where he was the only defendant.

Further, unlike Tsao, none of the *Buntrock* defendants who were granted relief had also been criminally convicted for the offense, committed perjury or otherwise obstructed the SEC investigation, or been the "chief architect and actor" in the scheme. *Id.* These factors overcome Tsao's argument that the result here should be the same as in *Buntrock*.

## II.  Rule 60(b)(6): Relief from Judgment for Any Justifiable Reason

### a.  Legal Standard

Tsao also invokes Rule 60(b)(6), a catchall provision providing that the court may grant relief from a final judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). "The remedy afforded by Rule 60(b) is an extraordinary one that is only to be invoked upon a showing of exceptional circumstances."[2] *K.C. v. Shipman*, 716 F.3d 107, 117 n.3 (4th Cir. 2013) (quoting *Compton v. Alton S.S. Co.*, 608 F.2d 96, 102 (4th Cir. 1979); *see also Aikens v. Ingram*, 652 F.3d 496, 500–01 (4th Cir. 2011). Accordingly, this Court has stated that Rule 60(b) motions "are an extraordinary remedy which should be used sparingly." *Arnold v. CitiMortgage, Inc.*, No. RWT 07-2617, 2011 WL 2457694, at *4 (D. Md. June 14, 2011) (citing *Pacific Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)). The exceptional circumstances requirement helps balance the "sanctity of final judgments" with the court's responsibility to ensure justice is done. *Compton*, 608 F.2d at 102.

### b.  Tsao Has Not Demonstrated Extraordinary Circumstances that Justify the Extraordinary Relief of Rule 60(b)(6).

If Tsao has not shown "changed" circumstances to bring himself within Rule 60(b)(5), he certainly has not shown "exceptional" circumstances that would justify relief under

---

[2] The "exceptional" or "extraordinary" circumstances requirement is sometimes framed as a prerequisite to Rule 60(b) relief in general, and sometimes more narrowly described as an element of the Rule 60(b)(6) catchall. *Compare Werner v. Carbo*, 731 F.2d 204, 206–07 (4th Cir. 1984) ("To bring himself within Rule 60(b), the movant must make a showing of . . . exceptional circumstances) *with Aikens v. Ingram*, 652 F.3d 496, 501 (4th Cir. 2011) (requiring "extraordinary circumstances" for applications of subsection (6) in particular).

subsection (6).  Compliance with the law and with a court order is not exceptional; it is expected.  Tsao has not shown extraordinary circumstances justifying invocation of Rule 60(b)(6).  What is exceptional is Tsao's egregious conduct that led to his prosecution and the consent order in this case, including the lifetime bar that was then, and remains, entirely appropriate.

## CONCLUSION

Tsao has failed to show a significant change in either factual conditions or the law that would warrant a modification of the officer-and-director bar, or "why a result that he chose is no longer fair."  *Alexander*, 2013 WL 5774152, at *5.  Accordingly, the Court will, by separate order, deny Tsao's Motion to Reopen Case and Modify Officer-and-Director Bar, ECF No. 39.

Date:  April 4, 2016                                             /s/
                                                    ROGER W. TITUS
                                            UNITED STATES DISTRICT JUDGE